**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                  :

MARGARET PASQUA and       :
KIMBERLEY BROWNE,         :
                                    :

                        Plaintiffs,    :      Civil Action No. 15-3501 (FLW) (DEA)
                                    :

      v.                            :

                                      :          **OPINION**

THE COUNTY OF HUNTERDON;    :
THE HUNTERDON COUNTY BOARD  :
OF CHOSEN FREEHOLDERS; _et al._,  :
                                    :

                       Defendants.    :
_____  :

## <u>WOLFSON, United States District Judge</u>:

      Following the termination of their employment with the County of Hunterdon (the "County"), Plaintiffs Margaret Pasqua and Kimberly Browne (collectively, "Plaintiffs") filed two separate, but similar, lawsuits in state court challenging their termination, which cases were subsequently removed to this Court on the basis of federal question jurisdiction. _See Pasqua et al. v. The County of Hunterdon et al._, No. 14-4203 ("_Pasqua I_") and _Pasqua et al. v. The County of Hunterdon et al._, No. 15-3501 ("_Pasqua II_"). On August 11, 2016, this Court issued an Omnibus Opinion granting summary judgment as to the majority of Plaintiffs' claims in the first of those cases, _Pasqua I_, and remanded the remainder of that case to state court. _See Pasqua v. Cty. of Hunterdon_, No. 14-4203, 2016 WL 4253958 (D.N.J. Aug. 11, 2016) (the "Omnibus Opinion"). In the same Opinion, the Court also ruled upon motions to dismiss filed in the instant case. _Id._

Presently before the Court is Defendants, the County, the Hunterdon County Board of Chosen Freeholders (the "Board"), and various County employees and officers'[1] (collectively with the County and the Board, the "Moving Defendants") Motion for Summary Judgment as to certain claims asserted by Plaintiffs in *Pasqua II*. For the reasons that follow, the Court: (1) grants the Moving Defendants' Motion for Summary Judgment as to Counts Five, Twelve, Thirteen, and Fourteen, the federal claims asserted by Plaintiffs in the *Pasqua II* Complaint; (2) declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims; and (3) denies the remainder of Defendants' Motion for Summary Judgment without prejudice. Accordingly, this matter is remanded to the Superior Court of New Jersey, Law Division, Hunterdon County, for further proceedings.

## I.    **BACKGROUND**

This matter has a protracted procedural history, involving two separate litigations that have proceeded through state and federal courts. Because the parties are intimately familiar with the facts and procedural history of this case, the Court will only recount the relevant portions herein, and will also incorporate the background facts set forth in the Omnibus Opinion. *See Pasqua*, 2016 WL 4253958 at *2-5.

### A.    **Factual Background[2]**

The instant dispute arises out of the termination of Plaintiffs' employment with the County. In May 2008, Ms. Pasqua was appointed to the positions of Chief Financial Officer

---

[1] Specifically, the following County employees and officers move for summary judgment: Cynthia J. Yard, George B. Melick, William G. Mennen, Robert G. Walton, J. Matthew Holt, John King, John E. Lanza, Suzanne Lagay. The Court notes that individual defendant Edward J. Florio has not moved for summary judgment.

[2] The following facts are undisputed, except where noted, and are viewed in the light most favorable to Plaintiffs, the non-moving parties on the instant Motion for Summary Judgment.

("CFO") and Treasurer of the County. Defendants' Statement of Material Facts ("Defs.' Statement"), ¶ 1; Plaintiffs' Response to Defendants' Statement of Material Facts ("Pls.' Resp."), ¶ 1. In her positions as CFO and Treasurer, Ms. Pasqua had responsibility for the County's financial statements, budget, and books. Plaintiffs' Supplemental Statement of Material Facts ("Pls.' Suppl. Statement"), ¶ 4; Defendants' Response to Plaintiffs' Supplemental Statement of Material Facts ("Defs.' Resp."), ¶ 4. Also in 2008, Ms. Browne was hired as the County's Director of Finance.[3] Defs.' Statement at ¶ 9; Pls.' Resp. at ¶ 9. Ms. Pasqua and Ms. Browne served in their respective positions until December 30, 2013, when they were both terminated by the Board for, *inter alia*, allegedly authorizing improper payments of medical benefits and failing to maintain accurate financial records. Pls.' Suppl. Statement at ¶ 1; Defs.' Resp. at ¶ 1.

According to Defendants, Plaintiffs occupied the top two positions in the County's Finance Department ("Finance"), which bore ultimate responsibility for all financial matters in the County. Defs.' Statement at ¶¶ 15-16; Pls.' Resp. at ¶¶ 15-16. Defendants contend, and Plaintiffs deny, that as part of Plaintiffs' job duties, they were "were responsible for the development of internal controls to protect County assets and for recommendations ensuring accurate fiscal and financial management," as well as for implementing "internal controls to avoid the County's payment of health benefits to ineligible persons." Defs.' Statement at ¶¶ 17-18; Pls.' Resp. at ¶¶ 17-18.

In 2013, the County hired an accounting firm to conduct an internal investigation and audit (the "Audit") of the County's finances. The Audit revealed that, for years, numerous aspects of the County's finances had been misstated and misrepresented, with negative financial

---

[3] As Director of Finance, Ms. Browne served as Ms. Pasqua's direct supervisor. Defs.' Statement at ¶ 9; Pls.' Resp. at ¶ 9.

consequences to the County. Defs.' Statement at ¶¶ 29, 44-50, 53-55, 58-59, 62, 71-72, 74, 78,

86, 98, 105; Pls.' Resp. at corresponding paragraphs. The parties dispute whether Plaintiffs were

responsible for the issues detected in the Audit.[4] In June of 2013, as a result of the Audit,

Plaintiffs were placed on administrative leave and the accounting firm of Donohue Gironda &

Doria ("Donohue") was engaged to undertake the operation of Finance and to identify necessary

improvements. Defs.' Statement at ¶¶ 29-30; Pls.' Resp. at ¶¶ 29-30.

On September 24, 2013, the County's Administrator, Cynthia J. Yard, served Plaintiffs

with a notice of disciplinary action, charging Plaintiffs with the following offenses:

> (1) Neglect of Duty;
> (2) Serious mistake due to carelessness where . . . there is a financial loss to the County;
> (3) Failure to complete regular report;
> (4) Incompetency of inability to perform assigned duties;
> (5) Insubordination;
> (6) Conduct Unbecoming a Public Employee;
> (7) Violation of a rule, regulation, policy, procedure, order or administrative decision where there is a financial loss to the County; and
> (8) Other sufficient cause.

Pls.' Suppl. Statement at ¶ 7; Defs.' Resp. at 7. The County scheduled the first hearing on

Plaintiffs' charges for the same day, with both Plaintiffs to appear jointly. Pls.' Suppl. Statement

at ¶¶ 10-12; Defs.' Resp. at ¶¶ 10-12. Despite Plaintiffs' arguments that they were entitled to

---

[4] Specifically, Defendants contend that Plaintiffs were responsible for these errors, yet disclaimed responsibility for internal controls and quality assurance efforts, despite a directive from Cynthia J. Yard, the County's Administrator, that Plaintiffs should develop internal controls to address the issues identified in the Audit. Defs.' Statement at ¶¶ 123-130; Pls.' Resp. at ¶¶ 123-130. Conversely, Plaintiffs take the position that they are not responsible for the issues detected in the Audit. To that end, Plaintiffs maintain that, contrary to Defendants' assertions, many of the errors in the County's financial records originated from failures by the County's human resources department to perform its designated responsibilities. Pls.' Suppl. Statement at ¶ 22; Defs.' Resp. at ¶ 22. Furthermore, Plaintiffs claim that a number of the errors already appeared in the County's financial books in May 2008, when Plaintiffs were appointed to their respective positions in the finance department. Pls.' Statement at ¶¶ 26-27; Defs.' Resp. at ¶¶ 26-27.

separate hearings, the Hearing Officer in the matter, Edward J. Florio, ultimately conducted joint hearings concerning the charges against Plaintiffs over the course of nine days. Pls.' Suppl. Statement at ¶¶ 10-12; Defs.' Resp. at ¶¶ 10-12.

On December 27, 2013, after nine days of hearings, wherein both sides presented testimony and documentary evidence, and Plaintiffs were represented by an attorney and permitted to cross-examine witnesses, the Hearing Officer issued a nine-page Preliminary Report, recommending that Plaintiffs be terminated based on the asserted charges. Defs.' Statement at ¶¶ 33-34, 145; Pls.' Resp. at ¶¶ 33-34, 145; Pls.' Suppl. Statement at ¶¶ 12-13; Defs.' Resp. at ¶¶ 12-13. On December 30, 2013, the Board voted in favor of terminating Plaintiffs from their respective positions. Defs.' Statement at ¶ 147; Pls.' Resp. at ¶ 147. On May 16, 2014, following Plaintiffs' termination, the Hearing Officer issued a Final Report. Defs.' Statement at ¶ 148; Pls.' Resp. at ¶ 148.

**B.    Procedural History**

Following the termination of their employment with the County, Plaintiffs filed *Pasqua I* and the instant suit in state court, which cases were subsequently removed to this Court on the basis of federal question jurisdiction. The Court will address the relevant procedural history pertaining to *Pasqua I* and *Pasqua II*, in turn.

*1.    Pasqua I*

On February 14, 2014, Plaintiffs filed *Pasqua I* in the Superior Court of New Jersey, Law Division, Hunterdon County, naming as defendants the County and the Board (collectively, the "County Defendants"). Plaintiffs' original complaint asserted that they were entitled to, *inter alia*, a *de novo* review by the Superior Court of their termination hearings, pursuant to N.J.S.A. 40A:9-

25.    Plaintiffs also asserted claims against the County Defendants, alleging that the County Defendants terminated them for political reasons, in violation of N.J.S.A. 40A:9-25.

On May 9, 2014, the Honorable Thomas C. Miller, P.J.Cv., dismissed Ms. Browne's claim for *de novo* review under N.J.S.A. 40A:9-25, finding that Ms. Browne was not entitled to a *de novo* review because she was an at-will employee.  *Margaret Pasqua, et al., v. The County of Hunterdon, et al*, Civ. No. HNT-L-66-14, slip op at 7-8 (N.J. Law Div. May 9, 2014).  However, because Plaintiffs alleged that Ms. Browne was terminated for political reasons, Judge Miller determined that she could state a claim for violation of N.J.S.A. 40A:9-25 on that basis.  *Id.* at 8.  Moreover, Judge Miller opined that although Ms. Browne did not have a federal property interest in her job, she might have a federal liberty interest in her "good name, reputation. honor, or integrity" that entitled her to a due process hearing under the Fourteenth Amendment of the United States Constitution to defend her good name.  *Id.* at 9-10.  Accordingly, Judge Miller gave Plaintiffs leave to amend their Complaint in *Pasqua I* to bring claims on behalf of Ms. Browne for political discharge, in violation of New Jersey law, and for federal Fourteenth Amendment due process violations.  *Id.* at 12-13.

On June 20, 2014, Plaintiffs filed the Amended Complaint in *Pasqua I* (the "*Pasqua I* Amended Complaint"), asserting seven claims against the County Defendants.  In Counts One and Three, Plaintiffs requested a *de novo* review of the County's decision to terminate them from their employment, pursuant to N.J.S.A. 40A:9-25, and sought, *inter alia*, back pay and lost benefits, a determination clearing Plaintiffs' names, and "such other relief and *damages* as may be obtainable . . . under N.J.S.A. 40:9-25."  *Pasqua I* Am. Compl. ¶¶ 1-6, 10, 16 (emphasis added).  In Counts Two and Four, Plaintiffs asserted claims for political discharge, in violation of N.J.S.A. 40A:9-25, seeking the same relief as Counts One and Three.  *Id.* at ¶¶ 7-9, 17-19.  In Count Five, Ms. Browne

alleged that her due process rights were violated, in violation of the United States Constitution and the New Jersey Constitution, based on "her right to liberty including her rights to her reputation and her right to seek, gain, and maintain, contract for, and engage in employment and her right to fundamental fairness." *Id.* at ¶¶ 20-24. Specifically, Count Five alleged that Ms. Browne's "discharge for cause imposes on her a stigma or other disability that affects her freedom to take advantage of employment opportunities and as a result affects her reputation and employment eligibility." *Id.* at ¶ 22. Count Five further alleged that "the procedure and process of the hearing and the Decision were deficient and inadequate in numerous and various respects which violated her due process rights . . . referenced above." *Id.* at ¶ 24. Count Six incorporated the allegations in Count Five, and alleged further that the hearing and decision to terminate Ms. Browne violated her due process rights, because it was "deficient and inadequate, . . . not reasoned, failed to provide findings of fact, a reference to the evidence, and the specific rationale for the decision." *Id.* at ¶¶ 25-29. Counts Five and Six sought back pay and lost benefits, and "other relief and *damages*." *Id.* at ¶¶ 24, 29 (emphasis added). Count Seven sought a declaration that various "damages claims" arising from Plaintiffs employment with the County did not need to be pled at that time. *Id.* at ¶¶ 30-47.

On July 2, 2014, Defendants removed *Pasqua I* to this Court, under 28 U.S.C. § 1331, based on original jurisdiction arising from Ms. Browne's federal due process claims. The parties filed cross motions for summary judgment on December 11, 2015, and December 21, 2015, which, as described below, were resolved in this Court's August 11, 2016 Omnibus Opinion.

### 2.    *Pasqua II*

On April 28, 2015, Plaintiffs filed the instant complaint in state court (the "*Pasqua II* Complaint"), naming as defendants the County, the Board, and various County employees and

officers,[5] in both their official and individual capacities, and certain accounting professionals[6] (collectively, "Defendants"). The *Pasqua II* Complaint is based on the same factual conduct underlying the *Pasqua I* Amended Complaint; *i.e.*, Plaintiffs assert claims relating to the termination of their employment with the County. Specifically, the *Pasqua II* Complaint asserts the following twenty-one causes of action:

- Count One: Plaintiffs assert a state law claim for constructive discharge. *Pasqua II* Compl. ¶¶ 1-15.

- Count Two: Plaintiffs assert a damages claim alleging that the County and various Individual Defendants violated New Jersey's Open Public Meetings Act, N.J.S.A. 10:4-6 *et seq.*, and the requirements of a RICE Notice under N.J.S.A. 10:4-12(b)(8). *Id.* at ¶¶ 16-20.

- Count Three: Plaintiffs assert a state law claim for defamation and damages to their reputations. *Id.* at ¶¶ 21-25.

- Count Four: Plaintiffs assert a state law claim for harassment. *Id.* at ¶¶ 26-44.

- Count Five: Plaintiffs allege that after they opined that the County needed a tax rate increase, various individual defendants retaliated against them on the basis of political motivations, in violation of N.J.S.A. 40A:9-25, as well as in violation of Plaintiffs' due process and First Amendment rights under the United States Constitution and New Jersey Constitution. *Id.* at ¶¶ 45-58.

- Count Six: Plaintiffs allege that the Board violated its duty of care, under the New Jersey Constitution, to protect Plaintiffs against workplace harassment, discrimination, and retaliation. *Id.* at ¶¶ 59-64.

- Count Seven: Plaintiffs allege that the Board's failure to uphold their duty of care to Plaintiffs, as described in Count Six, was negligent. *Id.* at ¶¶ 65-67.

---

[5] Specifically, the *Pasqua II* Complaint names the following defendants: Cynthia J. Yard, George B. Melick, William G. Mennen, Robert G. Walton, J. Matthew Holt, John King, John E. Lanza, Suzanne Lagay, and Edward J. Florio (collectively, the "Individual Defendants").

[6] Specifically, *Pasqua II* asserted state professional malpractice and tort claims against the following accounting firms and accountants: Donohue Gironda & Doria, Louis J. Garbaccio, Frederic J. Tomkins ("Donohue Firm"), Samuel Klein & Co., Michael McGuire ("Samuel Firm"), Wiss & Co., LLP and David J. Gannon ("Wiss Firm") (collectively, the "Accountant Defendants"). Nonetheless, as discussed, *infra*, this Court subsequently dismissed all claims against the Accountant Defendants.

- Count Eight:  Plaintiffs allege that the County, Board, and Individual Defendants failed to investigate, stop, prohibit, and correct the pattern of workplace harassment and retaliation directed towards Plaintiffs.  *Id.* at ¶¶ 68-73.

- Count Nine:  Plaintiffs allege that various defendants breached a duty to Plaintiffs to perform an independent audit and investigation of the circumstances leading to Plaintiffs' terminations.  *Id.* at ¶¶ 74-79.

- Count Ten:  Plaintiffs allege that Defendants wrongfully brought disciplinary charges against them, pursuant to a pattern of harassment and retaliation by Defendant Yard against Plaintiffs.  *Id.* at ¶¶ 80-86.

- Count Eleven:  Plaintiffs allege that they were unlawfully terminated from their employment for political reasons, prior to the issuance of a final decision in their administrative hearing, in violation N.J.S.A. 40A:9-25.  *Id.* at ¶¶ 87-94.

- Count Twelve:  Plaintiffs allege that they were terminated for political reasons, and that the Individual Defendants failed to adequately consider whether Plaintiffs termination was justified, in violation of Plaintiffs "rights and privileges under the Constitution and laws of the United States and the State of New Jersey and in violation of their due process and First Amendment rights under 42 U.S.C.A. Section 1983 and 1985."  *Id.* at ¶¶ 95-99.

- Count Thirteen:  Plaintiffs allege that following Plaintiffs' hearing, the Individual Defendants failed to read, study, and analyze the report of the Hearing Officer, for political reasons, in violation of N.J.S.A. 40A:9-25, Plaintiffs' "rights and privileges under the laws of the United States and the State of New Jersey and in violation of their due process and First Amendment rights under 42 U.S.C.A. Section 1983 and 1985."  *Id.* at ¶¶ 100-06.

- Count Fourteen:  Plaintiffs assert a § 1983 claim against Defendant Florio, alleging that Florio's conduct in connection with Plaintiffs' hearings violated their due process rights under the United States Constitution.  *Id.* at ¶¶ 107-17.  Specifically, Plaintiffs allege that Defendant Florio violated Plaintiffs "right to liberty including their rights to their reputations and their rights to seek, gain, and maintain, contract for, and engage in employment and their right to fundamental fairness."  *Id.* at ¶ 111.  Count Fourteen further alleges that Plaintiffs "discharge for cause imposes on them a stigma or other disability that affects their freedom to take advantage of employment opportunities and as a result affects their reputation and employment eligibility."  *Id.*

- Counts Fifteen through Eighteen:  Plaintiffs allege various state law claims against the Accountant Defendants, each of which were dismissed in this Court's Omnibus Opinion.  *Id.* at ¶¶ 118-143.

- Count Nineteen:  Plaintiffs allege that Defendants retaliated against Plaintiffs in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et seq*.  *Id.* at ¶¶ 144-52.

- Count Twenty:  Plaintiffs allege a state law spoliation claim against Defendant Yard and the County.  *Id.* at ¶¶ 153-59.

- Count Twenty One:  Plaintiffs allege a claim for intentional infliction of emotional distress against Defendant Yard and the County.  *Id.* at ¶¶ 160-63.

As this Court explained in its Omnibus Opinion, "the *Pasqua II* Complaint is not a model of clarity." *Pasqua*, 2016 WL 4253958 at *5.  To that end, while Plaintiffs assert the aforementioned twenty-one separate causes of action, "not all causes of action are specifically identified such that it would be readily apparent what type of claim(s) Plaintiffs are bringing in each count," as well as which Defendants are implicated in each count.  *Id.*  Nonetheless, it is clear – and there is no dispute – that of the twenty-one counts asserted, only Counts 5, 12, 13, and 14 (collectively, the "Federal Claims") assert causes of action arising under federal law.  On May 22, 2015, *Pasqua II* was removed to this Court based on federal question jurisdiction arising from the Federal Claims.

### C.    *The August 11, 2016 Omnibus Opinion*

On August 11, 2016, this Court issued an Omnibus Opinion in response to summary judgment motions filed in *Pasqua I*, and motions to dismiss filed in the instant case.  With respect to *Pasqua I*, the Court dismissed all counts asserted in the Amended Complaint, with the exception of Count One, Plaintiffs' state law claim seeking *de novo* review of Ms. Pasqua's termination.[7]  Because this Court's analysis of Plaintiffs' federal claims in *Pasqua I* is central to the instant dispute, the Court will briefly recount its discussion of those claims.

---

[7] The Court declined to exercise supplemental jurisdiction over Count One, and remanded that claim to state court for further proceedings.

In the Omnibus Opinion, the Court noted that, in Counts Five and Six of the *Pasqua I* Amended Complaint, Ms. Browne asserted claims against the County Defendants, pursuant to 42 U.S.C. § 1983, for deprivation of procedural due process, in violation of the Fourteenth Amendment of the United States Constitution. Specifically, Ms. Browne alleged that that she was deprived of her liberty interest in her reputation without sufficient due process of law. *See Pasqua I* Am. Compl. ¶¶ 22-23.

The Court explained that in order to state a claim for deprivation of procedural due process under § 1983, a plaintiff must demonstrate that "(1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [her] did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). The Court further observed that, in order to state a due process claim for deprivation of a liberty interest in one's reputation, the Third Circuit requires a plaintiff to show "a stigma to [her] reputation plus deprivation of some additional right or interest." *Id.* at 236 (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976); *Siegert v. Gilley*, 500 U.S. 226, 233-234 (1991); *Edwards v. California Univ. of Pennsylvania*, 156 F.3d 488, 492 (3d Cir. 1998). Within the public employment context, the Court noted that the stigma-plus test operates as follows:

> Applied in the context of public employment, under the stigma-plus test, "when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." *Id.* (quoting *Codd v. Velger*, 429 U.S. 624, 628 (1977)). As the Third Circuit has explained, "[t]he creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.' When such a deprivation occurs, the employee is entitled to a name-clearing hearing." *Borough of Kutztown*, 455 F.3d at 236. In that connection, to satisfy the "stigma" prong of the test, a plaintiff must demonstrate that her employer's stigmatizing statements "(1) were made publicly and (2) were false." *Id.* (internal citations omitted). A plaintiff will satisfy the "plus" prong of the test if she has been terminated or constructively discharged from her position as a public employee. *Id.* at 238.

*Pasqua*, 2016 WL 4253958 at *14.

The Court dismissed Ms. Browne's procedural due process claims, finding that, although Ms. Browne satisfied the "plus" prong of the stigma-plus test by demonstrating that she was terminated or constructively discharged, she failed to satisfy the "stigma" prong of the test, because she "presented no evidence that the County Defendants have publicly disseminated any information that would be injurious to Ms. Browne's reputation." *Id.* at *15. To that end, the Court explained that while Ms. Browne generally indicated that the County Defendants made public comments that were detrimental to her reputation, "nowhere in either Plaintiffs' statement of material facts not in dispute or their briefs do Plaintiffs identify what these statements were, when they were made, or how they were disseminated." *Id.* at *16. Accordingly, the Court found that Plaintiffs failed to set forth evidence of the alleged public dissemination of defamatory comments sufficient to withstand a motion for summary judgment, and dismissed Ms. Browne's federal due process claims.[8]

---

[8] In dismissing Ms. Browne's federal due process claims, the Court also rejected Ms. Browne's arguments that, despite her status as an at-will employee, she was entitled, under the Due Process Clause of the Fourteenth Amendment, to have a pre-termination hearing to clear her name. *Pasqua*, 2016 WL 4253958 at *14. Specifically, the Court found that, in order to have a property interest in one's employment that is protected by the Fourteenth Amendment, "a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Id.* (quoting *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005). And, because the law is clear that an at-will employee, like Ms. Browne, "does not have a legitimate entitlement to continued employment because she serves solely at the pleasure of her employer," *Elmore*, 399 F.3d at 282, the Court found that Ms. Browne could not bring a Fourteenth Amendment due process claim merely because she was terminated from her public employment. *Pasqua*, 2016 WL 4253958 at *14. Additionally, the Court noted that although Ms. Browne asserted in the *Pasqua I* Amended Complaint that she was deprived of a constitutional "right to fundamental fairness," Ms. Browne did not assert such a claim separate from her reputational liberty interest claim, and Plaintiffs provided no substantive arguments in their briefing to support the recognition of such a right in that case. *Id.* at *15 n. 11. Accordingly, the Court declined to construe the reference to a right to fundamental fairness as a separate claim under the Fourteenth Amendment. *Id.* Importantly, despite this Court's prior

In the Omnibus Opinion, the Court also granted summary judgment as to Plaintiffs' political discharge claims, asserted in Counts Two and Four of the *Pasqua I* Amended Complaint. In Counts Two and Four, Plaintiffs alleged that the Board removed Plaintiffs from their positions with the County for political reasons, in violation of N.J.S.A. 40A:9-25,[9] after Plaintiffs had advised one of the Board members, Robert G. Walton, of their belief that the County needed a tax increase. Importantly, while Plaintiffs did not directly allege that they were terminated for political reasons in violation of the First Amendment, the Court, with consent of the parties, construed Plaintiffs' state-based political discharge claims under the First Amendment. *See Pasqua*, 2016 WL 4253958 at *10. In that regard, the Court explained that to "state a prima facie case for political discharge in violation of the First Amendment, a plaintiff 'must show that (1) she was employed at a public agency in a position that does not require political affiliation, (2) she was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision.'" *Id.* (quoting *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007)).

The Court found that Plaintiffs failed to meet the second prong of the constitutional test, because Plaintiffs' statement to Mr. Walton was made in the course of their official duties as public employees, and therefore, the statement was not constitutionally protected conduct under

---

ruling, here, Plaintiffs again have not distinguished their fundamental fairness claim against the Hearing Officer, asserted in Count Fourteen of the *Pasqua II* Complaint, from their reputational liberty interest claim. *See Pasqua II* Compl. ¶ 111 (asserting a due process claim for a violation of Plaintiffs' "right to liberty including their rights to their reputations and their rights to seek, gain, and maintain, contract for, and engage in employment and their right to fundamental fairness."). Nor have Plaintiffs attempted to make such a distinction in their briefing. Thus, the Court will again decline to construe the reference to a right to fundamental fairness as a separate claim under the Fourteenth Amendment.

[9] N.J.S.A. 40A:9-25 provides, in relevant part, that "[n]o [County] officer or employee shall be removed from his office or position for political reasons." N.J.S.A. 40A:9-25.

the First Amendment. *Pasqua*, 2016 WL 4253958 at *11. Additionally, the Court found that Plaintiffs had not satisfied the third prong of the test, because they failed to demonstrate that three of the five Board members had knowledge of Plaintiffs' statement to Mr. Walton, and thus, a reasonable jury could not conclude that the Board as a whole terminated Plaintiffs for their tax views. *Id.* at *12-13. Accordingly, the Court granted summary judgment as to "Plaintiffs' claims for political discharge under N.J.S.A. 40A:9-25 (Counts Two and Four), *as well as any such claims asserted under 42 U.S.C.S. § 1983.*" *Id.* at *13 (emphasis added).

With respect to *Pasqua II*, the Court dismissed all claims asserted against the Accountant Defendants. Nonetheless, because the Court determined that the remaining claims asserted against the County Defendants and the Individual Defendants were substantially similar, if not identical, to those asserted in *Pasqua I*, it ordered Plaintiffs to show cause as to why the decisions rendered in *Pasqua I* should not apply to the federal claims in *Pasqua II*. The Court subsequently vacated its order to show cause and directed Defendants to file dispositive motions, if they so elected, on the issue of whether the Court's resolution of the federal claims in *Pasqua I* was dispositive of Plaintiffs' federal claims in this case. In response to the Court's directive, the Moving Defendants moved for summary judgment on April 28, 2017. Plaintiffs filed their opposition on June 6, 2017, and the Moving Defendants filed their reply on June 28, 2017.

## II.    **LEGAL STANDARD**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving

party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322. Once the moving party has satisfied this initial burden, the opposing party must identify "specific facts which demonstrate that there exists a genuine issue for trial." *Orson*, 79 F.3d at 1366; *see Gleason v. Norwest Mortg. Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). Not every issue of fact is sufficient to defeat a motion for summary judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Additionally, the nonmoving party cannot rest upon mere allegations; he or she must present actual evidence that creates a genuine issue of material fact. *See* FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 249. In conducting a review of the facts, the nonmoving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party. *See Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). Accordingly,

it is not the Court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party. *See Brooks v. Kyler*, 204 F.3d 102, 105, n.5 (3d Cir. 2000); *Big Apple BMW v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.  DISCUSSION

At the outset, the Court notes that because, for the reasons set forth below, I ultimately conclude that dismissal of each of the Federal Claims asserted in *Pasqua II* is warranted, and because, as in *Pasqua I*, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, the following analysis pertains solely to Plaintiffs' Federal Claims.[10]

---

[10] The Court notes that while the Moving Defendants have moved for summary judgment of Counts Five, Twelve, and Thirteen on *res judicata* grounds, in Count Fourteen of the *Pasqua II* Complaint, Plaintiffs assert a § 1983 claim solely against the Hearing Officer, Edward J. Florio – alleging that Mr. Florio violated Plaintiffs' due process right to liberty in conducting the hearings on Plaintiffs' termination – and Mr. Florio has not moved for summary judgment. Specifically, Count Fourteen alleges that Mr. Florio denied Plaintiffs a name-clearing hearing by refusing to conduct separate hearings for Plaintiffs and for failing to support the reasoning in his Preliminary Report. *See Pasqua II* Compl. ¶¶ 107-17. With respect to Mr. Florio, the non-moving Defendant, the Court notes that while *res judicata* is an affirmative defense, which must generally be raised by the moving party, *Ciarrocchi v. Kennedy Mem'l Hosp.*, 378 F. App'x 239, 241 (3d Cir. 2010), even if no party has raised a *res judicata* defense, a court may *sua sponte* dismiss a claim on *res judicata* grounds "if a court is on notice that it has previously decided the issue presented . . . ." *Arizona v. California*, 530 U.S. 392, 412 (2000) (citation and internal quotation marks omitted); *see Reaves v. Pennsylvania Bd. of Prob. & Parole*, 580 F. App'x 49, 52 (3d Cir. 2014) ("We have suggested that *sua sponte* consideration of preclusion can be appropriate in certain circumstances."); s*ee, e.g., Salerno v. Corzine*, 449 F. App'x 118, 122 (3d Cir. 2011) (affirming district court's *sua sponte* dismissal on the basis of claim preclusion); *Ciarrocchi*, 378 F. App'x 239, 241 (3d Cir. 2010) (affirming the district court's *sua sponte* dismissal of the complaint on the ground of issue preclusion); *King v. E. Lampeter Twp.*, 69 F. App'x 94, 96 (3d Cir. 2003) (affirming the district court's finding that the plaintiff was "barred from raising any allegations relating to claims that were or could have been raised in [the first action] by principles of [claim preclusion] and collateral estoppel," where the district court had *sua sponte* raised both preclusion defenses); *Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 352 (D.N.J. 2003) (*sua sponte* raising issue preclusion to dismiss a claim); *Hussein v. Lolita Reality*, No. 11-3955, 2013 WL 5530256, at *3-4 (D.N.J. Oct. 3, 2013) (*sua sponte* raising claim preclusion to bar a plaintiff from asserting a claim). Indeed, the ability to *sua sponte* raise a preclusion defense "is fully consistent with the policies underlying *res judicata*: it is not based

### A.    Res Judicata

Moving Defendants argue that Plaintiffs are barred from asserting the Federal Claims under the doctrines of claim preclusion and issue preclusion.  Specifically, Moving Defendants argue that, under the doctrine of claim preclusion, this Court's final judgment on Plaintiffs' federal political discharge claims (Counts Two and Four of the *Pasqua I* Amended Complaint) and Ms. Browne's procedural due process claims (Counts Five and Six of the *Pasqua I* Amended Complaint) in *Pasqua I* precludes Plaintiffs from asserting the Federal Claims in *Pasqua II*.[11] Alternatively, Moving Defendants contend that the issues presented in Plaintiffs' Federal Claims were adjudicated in *Pasqua I*, and that Plaintiffs are barred under the doctrine of issue preclusion from relitigating those issues. Before applying those preclusion concepts to the facts of this case, however, I will briefly review the distinction between claim preclusion and issue preclusion.

"*Res judicata* encompasses two preclusion concepts-issue preclusion, which forecloses litigation of a litigated and decided matter (often referred to as direct or collateral estoppel), and claim preclusion, which disallows litigation of a matter that has never been litigated but which should have been presented in an earlier suit."  *Bierley v. Dombrowski*, 309 F. App'x 594, 596–

---

solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Arizona*, 530 U.S. at 412 (citation and internal quotation marks omitted).  Here, because Plaintiffs' claim against Defendant Florio mirrors the federal claims asserted against the Moving Defendants, and concerns the same conduct at issue in *Pasqua I*, the Court will *sua sponte* consider whether Plaintiffs are barred, under both claim preclusion and issue preclusion, from asserting Count Fourteen against Defendant Florio.

[11] The Court notes that while in *Pasqua I*, the federal due process claims were asserted solely on behalf of Ms. Browne, in *Pasqua II*, Plaintiffs assert identical federal due process claims on behalf of both Ms. Browne and Ms. Pasqua.  Nonetheless, Moving Defendants argue that this Court's prior judgment has preclusive effect, for *res judicata* purposes, as to both Plaintiffs' due process claims in *Pasqua II*.  As discussed, *infra*, the Court agrees.

97 (3d Cir. 2009). The distinction between claim and issue preclusion has been aptly

summarized as follows:

> The rules of *res judicata*, as the term is sometimes sweepingly used, actually comprise two doctrines concerning the preclusive effect of a prior adjudication. The first such doctrine is "claim preclusion," or true *res judicata*. It treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." . . . When the plaintiff obtains a judgment in his favor, his claim "merges" in the judgment; he may seek no further relief on that claim in a separate action. Conversely, when a judgment is rendered for a defendant, the plaintiff's claim is extinguished; the judgment then acts as a "bar." . . . Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial. . . . The aim of claim preclusion is thus to avoid multiple suits on identical entitlements or obligations between the same parties, accompanied, as they would be, by the redetermination of identical issues of duty and breach.
>
> The second doctrine, collateral estoppel or "issue preclusion," recognizes that suits addressed to particular claims may present issues relevant to suits on other claims. In order to effectuate the public policy in favor of minimizing redundant litigation, issue preclusion bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties. . . . It is insufficient for the invocation of issue preclusion that some question of fact or law in a later suit was relevant to a prior adjudication between the parties; the contested issue must have been litigated and necessary to the judgment earlier rendered.

Wright, et al., 18A Fed. Prac. & Proc. Juris. § 4402 (2d ed.). In short, "[c]laim preclusion

prevents the relitigation of identical cases, whereas issue preclusion prevents the relitigation of

discrete issues." *Sec'y United States Dep't of Labor v. Kwasny*, 853 F.3d 87, 94 (3d Cir. 2017).

Claim preclusion is a broader doctrine than issue preclusion, in that it bars not only

claims that were actually brought in a previous lawsuit, but also claims that could have been

brought in the prior suit. *Duhaney v. Attorney Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010).

Claim preclusion "protect[s] litigants from the burden of relitigating an identical issue with the

same party or his privy and . . . promot[es] judicial economy by preventing needless litigation."

*Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007) (quoting *Parklane Hosiery Co. v.

Shore*, 439 U.S. 322, 327 (1979)); *see Gage v. Warren Tp. Committee & Planning Bd. Members*,

463 Fed. Appx. 68, 72 (3d Cir. 2012) ("The doctrine of claim preclusion is central to the purpose for which civil courts have been established, the conclusive resolution of disputes, and seeks to avoid the expense and vexation of multiple lawsuits, while conserving judicial resources and fostering reliance on judicial action by minimizing the possibility of inconsistent decisions.").  A party seeking to invoke claim preclusion must establish three elements:  (1) a final judgment on the merits in a previous lawsuit involving; (2) the same parties or their privies; and (3) a subsequent action based on the same cause of action.  *Mullarkey v. Tamboer*, 536 F.3d 215, 225 (3d Cir. 2008) (citations omitted).

By contrast, issue preclusion "prevents parties from relitigating an issue that has already been actually litigated."  *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007).  Issue preclusion "ensures that 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'"  *Burlington N. R. Co. v. Hyundai Merch. Marine Co*., 63 F.3d 1227, 1231 (3d Cir. 1995) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).  Issue preclusion applies if four requirements are met:  "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment."  *Id*.  (quoting *Burlington N. R. Co*, 63 F.3d at 1231-32).  Because Moving Defendants argue that Plaintiffs are barred from asserting the Federal Claims under both the doctrines of claim preclusion and issue preclusion, the Court will analyze whether the dismissal of Plaintiffs' Federal Claims is warranted under either doctrine.

### 1.    *Claim Preclusion*

As noted above, claim preclusion attaches where there was: "'(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *Strunk v. Wells Fargo Bank, N.A.*, 614 F. App'x 586, 588 (3d Cir. 2015) (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). The Third Circuit has advised that this test should not be applied "mechanically"; instead, courts should "'focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit.'" *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir. 2010) (quoting *Churchill v. Star Enterprises*, 183 F.3d 184, 194 (3d Cir. 1999)); *see Strunk*, 614 F. App'x at 588 ("The principle of claim preclusion bars not only claims that were brought, but also those that could have been brought, in a previous action."). Requiring plaintiffs to present all claims arising out of the same occurrence in a single suit is designed to "avoid piecemeal litigation and conserve judicial resources." *Sheridan*, 609 F.3d at 260.

Here, the first element of claim preclusion is satisfied, because this Court's Omnibus Opinion, granting summary judgment on Plaintiffs' federal due process and political discharge claims, constituted a final judgment on the merits with respect to those claims. Indeed, "the law is clear that summary judgment is a final judgment on the merits sufficient to raise the defense of *res judicata* in a subsequent action between the parties." *Hubicki v. ACF Indus., Inc.*, 484 F.2d 519, 524 (3d Cir. 1973); *see*, *e.g.*, *McLaughlin v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 686 F. App'x 118, 122 (3d Cir. 2017) ("District Court's grant of summary judgment in favor of the Plan in *McLaughlin I* constitutes a final judgment on the merits for the purposes of *res judicata*."). Conversely, "a dismissal for jurisdictional purposes does not serve as a final judgment on the merits." *Simoni v. Luciani*, 872 F. Supp. 2d 382, 390 (D.N.J. 2012); *see*

*Costello v. United States*, 365 U.S. 265, 286 (1961) ("If the first suit was dismissed for . . . want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit.").

In its Omnibus Opinion, the Court granted summary judgment as to the federal claims asserted in Counts Five and Six of the *Pasqua I* Amended Complaint, finding that, even viewing the evidence in the light most favorable to Plaintiffs, Ms. Browne failed to establish claims for deprivation of procedural due process, in violation of the Fourteenth Amendment. The Court also granted summary judgment as to Plaintiffs' political discharge claims under the First Amendment, finding that Plaintiffs failed to demonstrate that they were terminated for engaging in constitutionally protected conduct. The federal claims asserted in *Pasqua I* were thus disposed of in a final judgment on the merits for the purposes of *res judicata*.[12]

Second, the Court finds that Defendants have satisfied the "same parties or their privies" requirement of the claim preclusion defense.[13] At the outset, it is important to note that Plaintiffs

---

[12] The finality of the Court's summary judgment order is not altered by the fact that Plaintiffs have appealed the Court's decision. *See United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 175 (3d Cir. 2009) ("[T]he pendency of an appeal does not affect the potential for *res judicata* flowing from an otherwise-valid judgment."); *Cohen v. Superior Oil Corp.*, 90 F.2d 810, 811 (3d Cir. 1937) (finding that the pendency of an appeal does not affect a judgment's finality for the purposes of *res judicata*) (cited approvingly in *McLaughlin v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 686 F. App'x 118, 122 (3d Cir. 2017)); *see also Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189 (1941) (finding that an appeal of a judgment "does not—until and unless reversed—detract from [the judgment's] decisiveness and finality."); *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007) ("[T]he fact that an appeal was lodged does not defeat the finality of the judgment."). Additionally, the Court notes that because it declined to exercise supplemental jurisdiction over Court One of the *Pasqua I* Amended Complaint, Ms. Pasqua's state law claim under N.J.S.A. 40A:9-25 for a *de novo* review of the Board's decision to terminate her employment, that jurisdictional ruling did not constitute a final judgment on the merits for *res judicata* purposes. Accordingly, the Court will not include that state-based claim in its claim preclusion analysis.

[13] The Court notes that it is unclear from the *Pasqua II* Complaint which parties Plaintiffs seek to assert the Federal Claims against. However, it is apparent that Plaintiffs have not asserted any of

do not dispute that this element of claim preclusion has been satisfied, and, because Plaintiffs named the County and the Board as defendants in both actions, these parties clearly meet the identity of the parties test. Additionally, while Plaintiffs did not name the Individual Defendants in *Pasqua I*, the Third Circuit has explained that claim preclusion "may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants." *Lubrizol*, 929 F.2d at 966 (quoting *Gambocz v. Yelencsics*, 468 F.2d 837, 841 (3d Cir. 1972)); *see, e.g.*, *Hickox v. Cty. of Blair*, 591 F. App'x 107, 110 (3d Cir. 2014) (affirming the district court's dismissal of the plaintiff's second complaint on the ground of claim preclusion, despite the fact that the second complaint included an additional defendant not named in the first). And, importantly for the purposes of the present case, "a lesser degree of privity is required for a new defendant to benefit from claim preclusion than for a plaintiff to bind a new defendant in a later action." *Lubrizol*, 929 F.2d at 966.

For example, in *Gambocz*, after the plaintiff's first action against several alleged conspirators was dismissed without prejudice, the plaintiff brought a second action, based on the same underlying facts, naming additional defendants who allegedly participated in the same conspiracy. 468 F.2d at 839. Despite the addition of several new defendants in the second action, the Third Circuit affirmed the lower court's dismissal of the plaintiff's second complaint on clam preclusion grounds. *Id.* at 842. The Court reasoned:

> We previously determined that the essential allegations of the second complaint parallel those of the first. Moreover, what was averred in the original action was a conspiracy participated in by named individuals, and the sole material change in the later suit was the addition of certain defendants, some of whom had been named in the original complaint

<hr>

the Federal Claims against the Accountant Defendants, who were already dismissed from this action. Accordingly, the Court will analyze the "same parties or privies" element of claim preclusion with regard to the County, the Board, and the Individual Defendants.

as participating in the conspiracy but had not been named as parties defendant at that time. We conclude that the relationship of the additional parties to the second complaint was so close to parties to the first that the second complaint was merely a repetition of the first cause of action and, therefore, it is barred by application of [claim preclusion].

*Id.*

Similarly, here, the Court finds that although the Individual Defendants were not named as defendants in *Pasqua I*, they may invoke claim preclusion against Plaintiffs' Federal Claims, because there is a sufficiently "close and significant relationship" between the Individual Defendants and the County Defendants, with respect to the Federal Claims, to satisfy the privity requirement. In that regard, the conduct forming the basis of Plaintiffs' Federal Claims against the Individual Defendants all relates to Plaintiffs' termination, and pertain solely to acts taken by the Individual Defendants in the course of their official duties with the County. Additionally, the allegedly unconstitutional conduct referenced in Plaintiffs' Federal Claims are the same acts complained of in *Pasqua I*. The only material difference between the federal claims in *Pasqua I* and this case is the addition of the Individual Defendants as named defendants here. Under these circumstances, where the claims presented in the two actions are identical, the County Defendants were named in both actions, and the Individual Defendants have a close and significant relationship to the County Defendants, the Court finds that the "same parties or their privies" requirement of the claim preclusion defense has been satisfied. *See*, *e.g.*, *Sheridan*, 609 F.3d at 261 (finding that the defendant-company "met the 'same parties' requirement of the claim preclusion defense because [the plaintiff] and the [defendant-company] were parties in both actions. The fact that there are additional parties in [the second action] does not affect our conclusion."); *Heine v. Dir. of Codes & Standards*, No. 15-8210, 2017 WL 3981135, at *8 (D.N.J. Sept. 11, 2017) (applying claim preclusion, where the parties in the first and second actions were identical, with the exception of several additional parties in the second case); *Heine*

*v. Comm'r of Dep't of Cmty. Affairs of New Jersey*, No. 21-15347, 2017 WL 4516568, at *9 n. 13

(D.N.J. Oct. 10, 2017) (applying claim preclusion, despite the fact that four of the plaintiffs in

the second action were not parties to the first, where the remainder of the plaintiffs and

defendants involved in the second action were parties to the first action).[14]

---

[14] The Court notes that Plaintiffs have sued the Individual Defendants in both their official and individual capacities. To the extent that the Individual Defendants are sued in their official capacities, they are in privity with the County Defendants as a matter of law. *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988) ("[G]overnmental officials sued in their official capacities for actions taken in the course of their duties are considered in privity with the governmental body."); *Opdycke v. Stout*, 233 F. App'x 125, 129 n. 6 (3d Cir. 2007) ("To the extent that the individual defendants . . . are sued in their official capacities, they are, as a matter of law, in privity with Franklin Township."). To the extent that the Federal Claims are asserted against Plaintiffs in their individual capacities, however, the privity question is less clear. To that end, the Third Circuit has observed that some courts "have declined to assume that privity exists between a municipality and its officers or other employees, . . . especially where . . . the added defendants are sued in both their personal and official capacities." *Huertas v. City of Philadelphia*, 188 F. App'x 136, 137 (3d Cir. 2006). Nonetheless, in *Huertas*, the Third Circuit declined to resolve the question of whether, for the purposes of *res judicata*, privity exists between a county and its officers or employees, where the officers have been sued in their individual capacities, and that issue remains an open question in this Circuit. *Id.* And, where, as here, a plaintiff fails to allege any actions taken by the defendants in their individual capacities that are separate and distinct from actions taken in their official capacities, several courts have found that the same parties or privies requirement of claim preclusion is satisfied. *See Licari v. City of Chicago*, 298 F.3d 664, 667 (7th Cir. 2002) (finding that the plaintiff's "addition of Board members as defendants in their individual and official capacities [did] not prevent satisfaction of [the same parties requirement]," where the plaintiff did "not allege any action taken against him by the defendants (in either their official or individual capacities) that is separate and distinct from any action taken by the Board."); *see also Williams v. City of Allentown*, 25 F. Supp. 2d 599, 604 (E.D. Pa. 1998) (finding that the same parties or privies element of claim preclusion was satisfied, despite the plaintiff's addition of individual capacity claims against new government officials in the second action, because the officials were being sued for the same actions implicated in the first suit, and they had a "sufficiently close relationship with prior parties that they should be considered in privity with those former parties."); *Fleming v. City of Detroit*, No. 04-74081, 2006 WL 2559862, at *6 (E.D. Mich. Sept. 1, 2006) ("Where there is a sufficient identity of interest between a government official and the governmental entity or where the inclusion of the personal capacity claim amounts to nothing more than a pleading artifice, privity may be found to exist regardless of the fact that the official has been sued in his personal capacity."). In the instant case, the Court finds that the "same parties or their privies" requirement of claim preclusion has been satisfied, despite Plaintiffs' addition of individual capacity claims against the Individual Defendants in *Pasqua II*. Importantly, Plaintiffs have not explicitly alleged, in the Federal Claims, any actions taken by the Individual Defendants in their

Third, the Federal Claims in this action are based on the same cause of action asserted in *Pasqua I*. Courts within the Third Circuit "take a 'broad view' of what constitutes the same cause of action." *Sheridan*, 609 F.3d at 261. To that end, the Third Circuit has disavowed attempts to create a "simple test . . . for . . . determining what constitutes a cause of action for *res judicata* purposes." *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984) (quoting *Donegal Steel Foundry Co. v. Accurate Prod. Co.*, 516 F.2d 583, 588 n. 10 (3d Cir. 1975)). Rather, courts "look toward the 'essential similarity of the underlying events giving rise to the various legal claims.'" *Lubrizol*, 929 F.2d at 963 (quoting *Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp.*, 688 F.2d 166, 171 (3d Cir. 1982)); *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) ("'*Res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims.'") (quoting *Sheridan*,

---

individual capacities, as opposed to their official capacities, that are separate and distinct from the actions of the County Defendants, and the Court cannot discern, in conducting its own examination of the Complaint, any allegations against the Individual Defendants that differ from the allegations Plaintiffs asserted against the County Defendants in *Pasqua I*. Rather, it appears that the Individual Defendants are being sued for the same conduct complained of in *Pasqua I*. Indeed, Plaintiffs do not even draw the individual capacity versus official capacity distinction in their Opposition brief, or otherwise argue that the same parties requirement for claim preclusion has not been satisfied. Accordingly, the Court finds that the "same parties or their privies" element has been satisfied. Indeed, it would undermine the animating purposes of the claim preclusion doctrine to allow Plaintiffs to circumvent claim preclusion and relitigate claims already decided against the County Defendants by merely adding several additional defendants in the subsequent suit. *See Wood v. Coleman*, No. 83-27, 1989 WL 29250, at *15 (E.D. Pa. Mar. 29, 1989) ("[M]erely adding some facts, naming additional defendants, or proposing a different theory of recovery will not convert one cause of action into a second cause of action and thereby evade the preclusive effect that the first cause of action has if both actions involve the same liability-creating conduct on the part of the defendants and the same alleged invasion of the plaintiffs' rights."). In any event, as discussed, *infra*, even if the identity of the parties element is not met in this case, precluding the application of claim preclusion, nonetheless, because the Court finds that Plaintiffs are also barred from asserting the Federal Claims under issue preclusion, summary judgment as to those claims is warranted.

609 F.3d at 261). The "essential similarity" approach "reflects the 'present trend . . . of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.'"[15] *Duhaney*, 621 F.3d at 348 (quoting *Lubrizol*, 929 F.2d at 963).

In conducting the essential similarity inquiry, courts look to the following *Athlone* factors: "'(1) whether the acts complained of and the demand for relief are the same . . . ; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same . . . ; and (4) whether the material facts alleged are the same.'" *Sheridan*, 609 F.3d at 261 (quoting *Athlone*, 746 F.2d at 984). "It is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions." *Blunt*, 767 F.3d at 277 (internal quotation marks and citation omitted); *see Elkadrawy v. Vanguard Grp.*, Inc., 584 F.3d 169, 173 (3d Cir. 2009) (advising that the same cause of action analysis "does not depend on the specific legal theory invoked, but rather 'the essential similarity of the underlying events giving rise to the various legal claims.'") (citation omitted); *Lubrizol*, 929 F.2d at 963 ("A mere difference in the theory of recovery is not dispositive."). And, as referenced above, claim preclusion "bars not only claims that were brought in the previous action, *but also claims that could have been brought*." *Post*, 501 F.3d at 169 (emphasis added). Thus, "'[t]he fact that several new and discrete discriminatory events are alleged does not compel a different result. A claim extinguished by *res judicata* includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Blunt*, 767 F.3d at 277 (citation omitted).

---

[15] For this reason, the "essential similarity" approach to defining a cause of action is alternatively referred to as the "transactional" approach. *See Duhaney*, 621 F.3d at 350.

Here, focusing on the *Athlone* factors in light of the "essential similarity of the underlying events giving rise" to Plaintiffs' legal claims, the Court finds that the Federal Claims in this action are essentially duplicative of the federal claims asserted in *Pasqua I*.  Principally, the material facts and events underlying the federal claims in both actions are virtually identical, arising entirely out of the investigation and termination of Plaintiffs from their positions with the County.  And, even accepting that *Pasqua II* alleges several new, discrete facts, these facts arise from the same transaction complained of in *Pasqua I*, and thus, could have been asserted in the initial action.  *See Elkadrawy*, 584 F.3d at 173–74 ("Even crediting [the plaintiff's] attempt to distinguish his second set of facts as 'new,' it is beyond dispute that these allegations 'could have been brought' as part of his first complaint.").  To that end, the allegations levied against the Individual Defendants all arise out of the same employment relationship and all concern the termination of Plaintiffs' employment with the County.  Thus, the fact that several new and discrete factual allegations are raised here does not alter this Court's finding that the federal claims alleged in both actions are essentially the same, particularly since any of these facts could have been discovered with due diligence and raised in the first action.  *See Haefner v. N. Cornwall Twp.*, 40 F. App'x 656, 658 (3d Cir. 2002) ("Claim preclusion . . . applies even where new claims are based on newly discovered evidence, unless the evidence was either fraudulently concealed or it could not have been discovered with due diligence.").

Moreover, Plaintiffs' federal theories of recovery are essentially the same in both actions. In that regard, as in *Pasqua I*, the *Pasqua II* Complaint asserts constitutional claims under § 1983, alleging deprivations of Plaintiffs' procedural due process rights in violation of the Fourteenth Amendment.  Indeed, in both cases, Plaintiffs allege due process claims for harm to their reputations caused as a result of their termination, and for the procedure and decision

related to their termination. Additionally, Plaintiffs' First Amendment claims in this case are based on the same conduct that formed the basis for Plaintiffs' First Amendment claims in *Pasqua I*; *i.e.*, that Plaintiffs were terminated for expressing their opinions that the County needed a tax increase. And, because Plaintiffs assert virtually identical federal theories in both actions, based on the same underlying factual conduct, the witnesses and documents necessary to establish the Federal Claims at trial are the same as needed to establish Plaintiffs' federal claims in *Pasqua I*. Accordingly, the Federal Claims raised here are essentially the same as those raised in *Pasqua I*, satisfying the third factor for the application of claim preclusion.

Plaintiffs' attempt to circumvent the fact that the two actions assert essentially identical federal claims is unavailing. To that end, despite Plaintiffs' arguments to the contrary, even assuming that Plaintiffs' Federal Claims differ slightly than their federal theories of recovery in *Pasqua I*, those differences do not render *Pasqua II* a discrete cause of action. As the Court has already noted, claim preclusion bars not only claims that were actually asserted in a previous action, but also "claims that *could have* been brought." *Post*, 501 F.3d at 169 (emphasis added). Thus, the relevant question is not whether Plaintiffs did, in fact, assert the Federal Claims in *Pasqua I*, but whether they *could have* asserted these claims in *Pasqua I*.[16] As the Court has already discussed, the federal claims underlying both actions arise from the same employment relationship and concern the termination of Plaintiffs' employment from the County. As a result,

---

[16] Plaintiffs argue that Defendants cannot invoke claim preclusion in this case, because "there was a jurisdictional bar to asserting claims in the first action." Pls.' Opp. to Defs.' Mot. for Summ. J., 12. Specifically, Plaintiffs argue that since "*Pasqua I* was a statutory review action of a disciplinary action," neither the state nor the federal court would have had jurisdiction to hear the damages claims asserted in this case. *Id.* at 13. Nonetheless, Plaintiffs have not cited to any support for the proposition that they would have been barred from asserting claims, constitutional or otherwise, that sought money damages in *Pasqua I*. To the contrary, Plaintiffs did in fact assert federal claims for deprivation of their due process rights and violation of the First Amendment in *Pasqua I*, and, in those federal claims, Plaintiffs sought money damages.

it is not dispositive that the federal due process claims in *Pasqua I* were asserted solely on behalf of Ms. Browne, and that the federal due process claims in *Pasqua II* are asserted on behalf of both Ms. Browne and Ms. Pasqua. To the contrary, it is clear that Ms. Pasqua could have asserted procedural due process claims in *Pasqua I*, because there was no jurisdictional bar against asserting such claims, and Ms. Pasqua's federal due process claims contain the same underlying factual conduct and identical allegations as those asserted by Ms. Browne. Indeed, Plaintiffs do not attempt to distinguish Ms. Browne's federal due process claims from Ms. Pasqua's federal due process claims in the *Pasqua II* Complaint. Accordingly, because Ms. Pasqua's federal due process claims *could have* been asserted in *Pasqua I*, the fact that Plaintiffs chose to assert those claims solely on behalf of Ms. Browne does not render Ms. Pasqua's due process claims in this case a different cause of action for claim preclusion purposes.

Plaintiffs also attempt to distinguish the federal claims asserted in *Pasqua I* from the Federal Claims here on the ground that *Pasqua I* was a prerogative writ request for *de novo* review, while *Pasqua II* is a "broad-based damages claim involving facts and circumstances leading up to, and following the hearing." Defs.' Opp. to Pls.' Mot. for Summ. J., 11. To that end, Plaintiffs argue that this Court's Omnibus Opinion only addressed Ms. Browne's claim to a right to *de novo* review and for political retaliation, and did not address Ms. Browne's other civil rights claims for damages, including the issue of whether the procedure and decision of the Hearing Officer were constitutionally deficient. Contrary to Plaintiffs contentions, however, the *Pasqua I* Amended Complaint did assert statutory and constitutional claims for "other relief and damages" related to the hearing and termination process. And, despite noting these damage claims in the Omnibus Opinion, the Court determined that Ms. Browne failed to set forth a claim for violation of procedural due process on the merits.

In sum, the Federal Claims asserted in this case are indisputably duplicative to the federal claims that this Court dismissed in *Pasqua I*. Barring Plaintiffs' Federal Claims is thus "consistent with the purpose of claim preclusion, namely finality and avoidance of piecemeal litigation." *Sheridan*, 609 F.3d at 262. Accordingly, because the assertions underlying the federal claims in both actions are the same, and because Plaintiffs either did bring, or could have brought, each of the Federal Claims asserted in this case in *Pasqua I*, the Court finds that summary judgment of the Federal Claims is warranted under the doctrine of claim preclusion.

### 2.     *Issue Preclusion*

Even if Defendants were not entitled to summary judgment on all of Plaintiffs' Federal Claims under the doctrine of claim preclusion, they would be so entitled under the alternative theory of issue preclusion. The doctrine of issue preclusion, or collateral estoppel,[17] prevents a party from relitigating issues that were adjudicated in a prior lawsuit. *Peloro*, 488 F.3d at 174; *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997). Issue preclusion exists to promote judicial consistency, encourage reliance on court decisions, and protect defendants from being forced to relitigate the same issues in multiple lawsuits. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" *Peloro*, 488 F.3d at 174–75 (quoting *Burlington N. R. Co.*, 63 F.3d at 1231-32.

---

[17] While courts often use the term "collateral estoppel," the Supreme Court has observed that "'issue preclusion' is the more descriptive term." *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 356 (2016).

"In its classic form, collateral estoppel also required 'mutuality'—*i.e.*, that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding." *Peloro*, 488 F.3d at 175. However, under the modern doctrine of non-mutual issue preclusion, "[c]omplete identity of parties in the two suits is not required for the application of issue preclusion." *Burlington N. R. Co.*, 63 F.3d at 1232; *see Peloro*, 488 F.3d at 175 ("Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary."). In this case, while the County Defendants were parties to the *Pasqua I* action, the Individual Defendants, who were not parties in *Pasqua I*, also seek to use issue preclusion defensively against Plaintiffs; *i.e.*, the Individual Defendants seek to invoke defensive non-mutual issue preclusion. For defensive non-mutual issue preclusion to apply, "the party to be precluded must have had a 'full and fair' opportunity to litigate the issue in the first action." *Peloro*, 488 F.3d at 175.

Here, the Court finds that Defendants have established each of the prerequisites for the application of issue preclusion with respect to the Federal Claims asserted in Counts Five, Twelve, and Thirteen, and Fourteen of the *Pasqua II* Complaint. The Third Circuit has previously held that "[t]o defeat a finding of identity of the issues for preclusion purposes, the differences in the applicable legal standard must be 'substantial.'" *Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995); *see also Montana v. United States*, 440 U.S. 147, 155 (1979) (the identity of issues requirement is fulfilled where the issues in the current case are "in substance the same" as those previously resolved). In the instant case, Plaintiffs have failed to defeat a finding of identify of the issues, because the issues presented by Plaintiffs' Federal Claims are in

substance the same as those resolved in this Court's decision pertaining to the federal claims asserted in *Pasqua I*.

In *Pasqua I*, this Court dismissed Plaintiffs' § 1983 claims for political retaliation in violation of the First Amendment and Ms. Browne's claim for deprivation of procedural due process in violation of the Fourteenth Amendment. Specifically, the Court found that Plaintiffs could not establish a claim for political discharge in violation of the First Amendment, because, Plaintiffs' statements regarding a tax increase were made within the scope of their employment, and thus, did not constitute politically protected conduct under the First Amendment. *Pasqua*, 2016 WL 4253958 at *10-12. Additionally, the Court found that even if the statements were constitutionally protected, Plaintiffs could not establish a claim for political discharge, because they failed to produce evidence sufficient for a reasonable jury to find that Plaintiffs' tax views were a substantial and motivating factor in the Board's decision to discharge them. *Id.* The Court also found that Ms. Browne had not established a claim for deprivation of procedural due process, because she presented no evidence that the County Defendants publicly disseminated information that would harm her reputation. *See id.* at *15. In so finding, the Court noted that, as in the present case, Ms. Browne's due process claims in the *Pasqua I* Amended Complaint alleged that the "procedure and process of the hearing and the Decision were deficient and inadequate in numerous ways that violated [Ms. Browne's] due process rights." *Pasqua I* Am. Compl. ¶ 23.

The Federal Claims in *Pasqua II* Complaint raise the same issues that were adjudicated in *Pasqua I*. To that end, Counts Five, Twelve, and Thirteen of the *Pasqua II* Complaint assert claims for political retaliation in violation of the First Amendment, alleging that Defendants retaliated against Plaintiffs after Plaintiffs expressed their opinion that the County needed a tax

increase.  Counts Twelve, Thirteen, and Fourteen assert § 1983 procedural due process claims

against the Board and the Individual Defendants, arising out of Plaintiffs' termination, alleging

that those defendants violated Plaintiffs' due process rights by, *inter alia*, failing to adequately

consider whether Plaintiffs' termination was justified and failing to provide Plaintiffs with

separate hearings to clear their names.  Indeed, these are precisely the issues that were decided in

*Pasqua I*, stemming from the same underlying factual conduct, and therefore, the first element

for the application of issue preclusion has been satisfied.

Moving Defendants have also met their burden of establishing the other elements of issue

preclusion.  In that regard, the issues raised by the Federal Claims were "actually litigated" in

*Pasqua I*, because Plaintiffs had a full and fair opportunity to present their claims before this

Court.[18]  *See Peloro*, 488 F.3d at 176.  Following extensive briefing by both parties, this Court

entered a "final and valid" judgment on those claims by granting summary judgment in

Defendants' favor.  The Court's order was "final" for the purposes of issue preclusion, because it

was "sufficiently firm to be accorded conclusive."  *See In re Docteroff*, 133 F.3d at 215-16.

Indeed, this Court issued a lengthy Omnibus Opinion resolving the federal claims in *Pasqua I*,

---

[18] While the Court acknowledges that Ms. Pasqua did not actually assert a claim for violation of her procedural due process rights in *Pasqua I*, that fact does not alter the Court's finding that Plaintiffs had a full and fair opportunity to litigate the procedural due process claim in *Pasqua I*. To that end, in *Pasqua II*, Plaintiffs do not distinguish between the due process claims asserted by Ms. Browne and Ms. Pasqua; rather, the due process claims asserted by both Plaintiffs in *Pasqua II* are identical to the due process claims asserted on behalf of Ms. Browne in *Pasqua I*. Under these circumstances, it would strain credulity to find that the issue of whether Plaintiffs were deprived of their due process rights was not actually litigated in *Pasqua I*.  Additionally, Ms. Pasqua was represented by the same attorney as Ms. Browne in *Pasqua I*, the due process claims asserted in both actions require the same proofs, and, as the Court has already found, Ms. Pasqua could have brought due process claims in *Pasqua I*, had she so elected.  Accordingly, in light of the "broad discretion" afforded trial courts in determining when to apply issue preclusion, the Court finds that issue preclusion is appropriate in this case. *Parklane Hosiery*, 439 U.S. at 331.

and Plaintiffs appealed that decision.[19]  *See In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)

(observing that, in determining whether a judgment is final for issue preclusion purposes, the

factors to consider include whether the parties were fully heard, whether a reasoned opinion was

filed, and whether that decision could have been, or actually was, appealed.).  Finally, it is clear

that the issues of whether Plaintiffs were discharged for political reasons, and whether Plaintiffs'

termination constituted a due process violation, were essential to this Court's prior judgment.

In sum, this Court finds that Plaintiffs are not "entitled to another bite of the apple" on the

issues of whether their termination constituted a political discharge in violation of the First

Amendment, or whether the conduct and procedure related to Plaintiffs' termination hearings

constituted a deprivation of Plaintiffs' due process rights.  Because Plaintiffs had a full and fair

opportunity to litigate those claims in *Pasqua I*, and because the Court issued a final, valid

judgment on those issues, the principle of defensive non-mutual issue preclusion bars Plaintiffs

from relitigating those issues in *Pasqua II*.  Accordingly, the Court will grant summary judgment

as to Counts Five, Twelve, Thirteen, and Fourteen of the *Pasqua II* Complaint.

### B. Supplemental Jurisdiction

Having found that summary judgment is warranted as to Plaintiffs' Federal Claims,

asserted in Counts Five, Twelve, Thirteen, and Fourteen of the *Pasqua II* Complaint, the Court

must address Plaintiffs' remaining state law claims.  Under 28 U.S.C. § 1367(c), a district court

may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all

claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  Federal district courts

have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of

---

[19] Moreover, as discussed in footnote twelve, *supra*, the fact that Plaintiffs have appealed this
Court's summary judgment Order does not alter that Order's finality for the purposes of *res
judicata. See 5 Unlabeled Boxes*, 572 F.3d at 175.

the United States." 28 U.S.C. § 1331.  Because Plaintiffs' remaining claims arise solely under state law, and therefore are not claims over which I have original jurisdiction, I decline to exercise supplemental jurisdiction over those claims.  As a result, Moving Defendants' Motion for Summary Judgment as to Counts One through Four, Six through Eleven, and Eighteen through Twenty-One is denied without prejudice.  *Pasqua II* (Civil Action No. 15-3501) is remanded to the Superior Court of New Jersey, Law Division, Hunterdon County for further proceedings.

**IV.**    <u>**CONCLUSION**</u>

For the foregoing reasons, Moving Defendants' Motion for Summary Judgment is granted as to Counts Five, Twelve, Thirteen, and Fourteen of the *Pasqua II* Complaint.  The Motion is denied without prejudice as to the remainder of Plaintiffs' state law claims.  I decline to exercise supplemental jurisdiction over the state law claims, and therefore, this action is remanded to the Superior Court of New Jersey, Law Division, Hunterdon County.

Dated:  November 27, 2017                             <u>/s/ Freda L. Wolfson</u>
                                                                          Hon. Freda L. Wolfson
                                                                          United States District Judge